. JOSEPHINE GAUEN *et al.*

*v.*

THE MOREDOCK AND IVY LANDING DRAINAGE DISTRICT No. 1.

*Filed at Mt. Vernon January 21, 1890.*

1. DRAINAGE LAW—*necessity of proposed drainage—may be questioned.* On the hearing of a petition for the formation of a drainage district · under the Levee act of 1879, as amended by the act of May 19, 1881, all parties through or upon whose lands any of the proposed work is to be constructed, or whose lands may be damaged or benefited thereby, are permitted to appear and contest the necessity or utility of the proposed. work, or any part thereof.

2. SAME—*assessments—limited to property benefited.* Under section 31, article 4, of the constitution, assessments by drainage districts are limited to the property benefited thereby.

3. SAME—*what lands will be benefited—who to determine—and herein,. of the province of the jury.* The statute commits to the judgment and determination of the drainage commissioners, subject to review and. correction by the county court, the question as to what lands in a drainage district will in fact be benefited by the proposed drains and ditches. When that is once settled by the confirmation of the commissioners' report, the decision, until reversed or set aside, is final and conclusive.

4. The jury appointed to assess damages and benefits have nothing to do with the question whether particular tracts of land included in the district will or will not be benefited by the proposed drainage system. They have no authority of law to find that only a part of a tract. in the district is benefited.

5. A jury appointed to assess the damages and benefits to lands in. a drainage district, reported the balance of the benefits against a tract of 160 acres, at a given sum, and stated in their report that the number of acres benefited was 118½: *Held,* that the attempt to determine that. only a portion of the tract was in fact benefited was extra-judicial and nugatory, and that the assessment was to be taken as having been made on the entire tract.

6. SAME—*what lands to be benefited—subject to contest—when and where.* Every person interested in lands in a proposed drainage district. has the right to appear in the county court and contest the application to confirm the report of the commissioners, and show that his land included in the district, or any part thereof, will not be benefited, and on such a showing it is the duty of the court to so amend the boundary of the district as to exclude such lands.

7. SAME—*change of boundaries of district—so as to include only lands to be benefited or damaged.* If the commissioners appointed to lay out the work find that the proposed district does not embrace all the lands to be benefited, or includes lands that will not be benefited, they may change such boundary so as to include the one and exclude the other, and the court may, at any time before declaring the district established, on the application of the commissioners or of any person interested, alter the same in such manner as may seem just.

8. SAME—*two systems—the "Levee act," and the "Farm Drainage act."* The legislature has enacted two entirely separate and independent codes of law applicable to the subject of drainage, and the organization and government of drainage districts. The one is known as the "Levee act," and the other as the "Farm Drainage act." A district organized under the one is subject only to the provisions of that act, and those of the other act have no application to such district.

9. SAME—*collecting assessments—of the right of foreclosure in chancery.* A drainage district organized under the Levee act can not foreclose its lien for delinquent assessments under section 72 of the "Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," approved June 27, 1885.

10. A drainage district formed under the Levee act, may, in the name of the People, foreclose its lien on lands for delinquent special assessments, under section 253 of the Revenue act.

11. Sections 26 and 27 of the Levee act, as amended in 1881, and the same provisions carried into the revision of 1885, and section 253 of the Revenue law, are *in pari materia,* in such sense as to entitle the two acts to be construed together, so far as the collection of the revenue and assessments is concerned. The word "taxes," in section 253 of the Revenue act, by a proper construction, includes special assessments, so far as to authorize a foreclosure in equity of the lien given by law for such assessments.

12. FORECLOSURE *for taxes and assessments—in chancery—generally.* In this State, in the absence of a statute expressly conferring it, a court of chancery has no jurisdiction to entertain a bill for the foreclosure of the lien upon real estate, given by the statute, for taxes and assessments levied thereon.

13. CONSTRUCTION OF STATUTES—*when in pari materia.* Ordinarily, acts passed by the General Assembly at the same session and relating to the same subject will be construed together, as forming one body of law. But this is so only by virtue of a rule of construction, which must give way to the legislative will when properly expressed.

APPEAL from the Circuit Court of Monroe county; the Hon. GEORGE W. WALL, Judge, presiding.

Messrs. WINKELMAN & MORRISON, for the appellants.

Mr. E. P. SLATE, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, originally filed in the name of the People of the State of Illinois, for the use of the Moredock and Ivy Landing Drainage District, No. 1, in Monroe county, Illinois, against Josephine Gauen and George A. Gauen, her husband, to foreclose the lien of said drainage district upon certain land of the defendants for assessments thereon, made for the purpose of constructing the drainage system of said district, and certain assessments or taxes levied for the purpose of keeping the same in repair.    During the pendency of the suit the bill was amended by striking out the name of the People of the State of Illinois, and the suit was thereafter prosecuted in the name of said drainage district.

The bill alleges that, on or about November 20, 1882, said drainage district was duly and legally organized by the County Court of Monroe county, under the Drainage Law then in force, and vested with power to levy taxes and assessments for the purpose of establishing a drainage system to drain wet and overflowed lands within the limits of said district; that on or about July 17, 1883, an assessment was ordered by said County Court, amounting to $41,785.69, to be paid in installments as follows, viz: twenty per cent. August 15, 1883, ten per cent. August 15th in each of the years 1884, 1885 and 1886, fifteen per cent. August 15, 1887, and thirty-five per cent. August 15, 1888, and also an assessment of fifteen cents per acre for each of the years 1885 and 1886, for keeping the work in repair; that an assessment roll of the lands embraced in said district was made by a jury, assessing each tract in proportion to the benefits thereto by the proposed drainage system; that defendant Josephine Gauen, on the first day of May in each of the years from 1883 to 1887, both inclusive, was the owner

in fee of the south-west quarter of section 27, township 3, south, of range 11, containing 160 acres of land, and lying within the boundaries of said district, and subject to assessments and taxes due said district, and that the sum of $1313.70, being the benefits thereto, after deducting the damages, was assessed thereon; that judgments were rendered by said County Court for the installments of said assessment for the years 1884, 1885 and 1886, and that under said judgments said land was sold and struck off to the State for want of bidders; that none of said taxes or assessments for which said judgments were rendered have ever been paid.

The bill prays for an accounting as to the amount of said unpaid taxes and assessments, and for a decree declaring them the first lien on said land, and ordering the defendants, or one of them, by a day to be fixed, to pay the same, and that in default of such payment, said land be sold therefor, and that, upon a failure to redeem from such sale pursuant to law, the defendants be barred and foreclosed of all right and equity of redemption in and to said premises.

The defendants filed their demurrer to the bill, which being overruled, defendant Josephine Gauen elected to abide by her demurrer. Defendant George A. Gauen answered admitting his interest in said land, and alleging that the jury called to assess said land in proportion to the benefits thereto, attempted to assess $118\frac{1}{2}$ acres of said 160 acre tract, and that the assessment is wholly void for want of proper location and description of the land assessed. All the other allegations of the bill are traversed by said answer.

A replication to said answer having been filed, and the master, on reference to him, having computed the amount of said unpaid taxes and assessments, including interest, at $508.22, the cause came on for final hearing on pleadings, proofs and the master's report, and at such hearing the court found the equity in the case to be with the complainant, and it was thereupon adjudged and decreed that the defendant pay to the

29—131 ILL.

complainant, within sixty days, said sum of $508.22, with interest from the date of the decree, and costs, and that in case of default in such payment, the entire tract of land described in the bill, or so much thereof as might be sufficient to realize said amount, interest and costs, be sold by the master as in ordinary cases of foreclosure, with statutory redemption and with the right to the purchaser to have executed to him a master's deed conveying said land to him in fee, in case said premises should not be redeemed as provided by law. From this decree the defendants have appealed to this court.

When the case first came before us we were inclined to the opinion that, without considering the other questions raised by counsel for the defendant, the assessment was void upon its face, and that for that reason the decree must be reversed. After further considering the case on rehearing, however, we have reached the conclusion that the views we then expressed can not be sustained.

The objection urged to the form of the assessment is, in substance, the one raised by the answer of George A. Gauen, viz, that while the tract of land in question contains 160 acres, the jury, by their assessment roll, seem to have found that only 118½ acres of it would be benefited, without designating or describing said 118½ acres in any mode by which it could be ascertained or distinguished from the residue of the tract, and also that said jury levied a total assessment of $1313.70, but left it uncertain whether it was their intention to levy that sum upon the entire tract, or only upon the indefinite 118½ acres found to be benefited.

It was admitted at the hearing that said drainage district was legally organized under the act entitled "An Act to provide for the construction, reparation, and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879. Laws of 1879, p. 120. A jury seems to have been

impaneled under the provisions of that act to assess the damages and benefits to the land to be affected by the proposed work, and said jury, after having made such assessment, returned their assessment roll in which they certified that, having taken the oath required by law, they did, on the 22d day of May, 1883, proceed to examine the lands to be affected by the proposed work, and to ascertain to the best of their ability and judgment the damages which would be sustained by or benefits accruing to each tract of land to be affected thereby, and to assess to each tract damaged its proportionate share of the entire damage, and if benefited, its share of such benefits, and to carry the balance to the proper column; and that they did assess to each tract benefited its proportionate share of the entire cost of such benefit. Said assessment roll, so far as it related to the land in question, was as follows:

| Owners' names. | Description of premises affected. | Survey. | Claim. | Section. | Township. | Range. | No. of acres in district. | No. of acres benefited. | Value per acre. | Total benefits. | Total damages. | Balance of benefits. | Balance of damages. | Yearly benefits. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Josephine Gauen. | SW¼ | | | 27 | 3 | 11 | 160 | 118 50 | | 1327 20 | 13 50 | 1313 70 | | 35 55 |

It will be seen, from an examination of said assessment roll, that it contains on its face certain apparent uncertainties and ambiguities. In the column headed, "Description of the premises affected," is inserted a description of the entire quarter section; in the column headed, "No. of acres in district," the figures "160" appear; in the column headed, "No. of acres benefited," we find the figures "118.50;" and after the total benefits and total damages are given in two separate columns, in another column headed, "Balance of benefits," are the figures, "1313.70." It can not be doubted that said entries, if construed solely from what appears upon the face of the assessment roll, indicate a finding by the jury that, of the entire 160 acres in the quarter section, only an indefinite 118½ acres would be benefited by the proposed drainage system, the iden-

tity of the 118½ acres thus found to be benefited being left wholly undetermined.   Furthermore, the assessment roll, on its face, appears ambiguous in this: a certain amount of benefits is assessed, but whether such assessment was intended to be imposed upon the entire tract, or merely upon the 118½ acres deemed benefited, seems to be left in doubt.

When we first considered the case, it seemed to us that these uncertainties and ambiguities rendered the proceedings by which the assessment was imposed fatally defective.   The conclusion seemed to be inevitable, that whether the assessment was to be construed as being imposed upon the whole tract or only upon the 118½ acres which the jury found would be benefited, it was equally infirm, though, it is true, for different reasons.   Thus, if the assessment was to be held to apply only to the 118½ acres, it was void for uncertainty, the particular land assessed not being designated or described in such way as to be capable of identification.   *Sanford* v. *The People*, 102 Ill. 375; *People* v. *C. & A. R. R. Co.* 96 id. 371; *Atwell* v. *Zeluf*, 26 Mich. 121; *People* v. *Reat*, 107 Ill. 581; *Pickering* v. *Lomax*, 120 id. 297.   On the other hand, if the assessment was held to apply to the whole 160 acres, it appeared to be in direct contravention of the amendment to the Constitution adopted at the general election in November, 1878, which authorizes the General Assembly to "provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby."   Const., art. 4, sec. 31.   The obvious effect of the foregoing provision of the constitution being to limit assessments by drainage districts to the property benefited, and the finding of the jury apparently showing that only 118½ acres of the defendants' land would be benefited, the assessment, if held to apply to the entire tract, would seem, in violation of

the constitutional limitation, to throw the burden of the proposed improvement upon 41½ acres of land not benefited. See *Commissioners, etc.* v. *Kelsey*, 120 Ill. 482 ; *Owners of Land* v. *The People*, 113 id. 296 ; *Craw* v. *Village of Tolono*, 96 id. 255.

But on further consideration of the case, in the light of those provisions of the statute under which the drainage district in question was organized, which prescribe and limit the duties and functions of juries impaneled to assess the damages and benefits to the several tracts of land embraced in the district, we are of the opinion that none of the rules of law above referred to have any application.

Said act, as amended by the act of May 19, 1881, provided for the organization of drainage districts upon the petition of a majority of the adult owners of lands within the proposed district, and representing one-third in area of the lands to be reclaimed or benefited, such petition to be filed in the County Court of the county in which the greater part of the lands to be affected were situate, and setting forth the name of the proposed district, the necessity for the same, with a description of the starting point, route and termini of the drains or ditches proposed to be constructed, and a description of the lands proposed to be affected, with the names of the owners, if known, and praying for the organization of a drainage district with the name and boundaries proposed, and for the appointment of commissioners to execute the proposed work. On the filing of such petition the clerk of the County Court was required to give public notice of the presentation of the same, and on the hearing of the petition all parties through or upon whose land any of the proposed work was to be constructed, or whose lands might be damaged or benefited thereby, were permitted to appear and contest the necessity or utility of the proposed work or any part thereof, and it was made the duty of the court, upon such hearing, to determine whether the petition contained the requisite number of signatures of the owners of land within the proposed district, and

if such was found to be the case, and if it further appeared to the court that the proposed drains or ditches were necessary, or would be useful for the drainage of the lands proposed to be drained thereby, the court was further required to so find, and to appoint three disinterested persons as commissioners to lay out and construct the proposed work.

Said commissioners were required, before entering upon the duties of their office, to take and subscribe an oath, to faithfully discharge the duties of their office without favor or partiality, and to render a true account of their doings to the court when required by law or the order of the court. It was further provided that, as soon as might be after their appointment, or within such time as the court might direct, said commissioners should examine the lands embraced within the proposed district, and determine, among other things, 1. the probable cost of the proposed work; 2. what lands would be thereby injured, and the probable aggregate amount of all damages such lands would sustain by reason of the laying out and construction of said work; 3. what lands would be benefited by the construction of the proposed work, and whether the aggregate amount of the benefits would exceed the cost of the construction of the work; and, 4. whether the proposed district described in the petition would embrace all the lands that would be damaged or benefited by the proposed work, and 'if not, to report what additional lands would be so affected.

It was further provided that, if the commissioners found that the proposed work, or such portion of it as would be satisfactory to the petitioners, could be done at a cost not exceeding such benefits, they should proceed to have proper surveys, profiles, plans and specifications thereof made, and report the same, with their conclusions, to the court. The commissioners were authorized to alter the commencement, route and termini of the proposed drains or ditches, or the number, extent or size of the same, in such manner as in their judgment would drain or protect the petitioners' lands with the least

damage and greatest benefit to all lands to be affected thereby, subject to the power of the court, on application of any person interested, to order such plans to be altered in such manner as might appear to the court to be just; and it was further provided that if the commissioners found that the proposed district, as described in the petition filed, would not embrace all the lands that would be benefited by the proposed work, or that it would include lands that would not be benefited and that were not necessary to be included in the district for any purpose, they were authorized to extend or contract the boundaries of the proposed district so as to include the former and exclude the latter, and it was provided that the boundaries adopted and reported by the commissioners might at any time before the court declared the district established, upon application of the commissioners or of any person interested, be altered by the court in such manner as should appear to it to be just. Notice of the final hearing by the court of the commissioners' report was required to be given, and the court was authorized after hearing all objections to such report, if it should be satisfied that the report should be confirmed, to enter an order confirming the same, and declaring the proposed district to be duly established as prescribed by law, and it was provided that, upon the entry of such order, the district should be deemed to be organized, with the boundaries as fixed by the order confirming the report of the commissioners.

It was made the duty of the court, upon the organization of the district as aforesaid, to impanel a jury of twelve men, having the qualifications of jurors in courts of record, who should be sworn to faithfully and impartially perform the duties required of them to the best of their understanding and judgment, and to make their assessment of damages and benefits according to law. Said jurors were required to proceed to examine the lands to be affected by the proposed work, and ascertain, to the best of their ability and judgment, the dam-

ages and benefits which would be sustained by or would accrue to the lands to be affected by the proposed work, and to make an assessment roll in which should be set down in proper columns the names of the owners, when known, a description of the premises affected, the number of acres in each tract, and if damages were allowed, the amount of the same, and if benefits, the amount of the same, and in case damages were allowed to and benefits assessed against the same tract of land, the balance, if any, should be carried forward to a separate column for damages or benefits, as the case might be.

It was further provided that, in making such assessment, the jury should award and assess the damages and benefits in favor of and against each tract separately, and in the proportion in which each tract of land would be damaged or benefited, and that in no case should any tract of land be assessed for benefits in a greater amount than its proportionate share of the estimated cost of the work, nor in a greater amount than it would be benefited by the proposed work.

In considering the provisions of the entire statute and amendment, of which the foregoing is a sufficiently full resume, certain conclusions appear to us to be clear. One is, that the question as to what lands in a drainage district would in fact be benefited by the proposed drains and ditches was committed by the statute to the judgment and determination of the drainage commissioners, subject to review and correction by the County Court; and that after that question was finally adjudicated by the decision of said court confirming the report of the commissioners, such decision, so long as it stood in full force and unreversed, was conclusive. The plan upon which drainage districts were organized under this statute clearly was, to have such lands only included within their boundaries as would in fact share to some extent in the benefits and therefore be liable to the same extent to the burdens incident to the construction of the proposed work. Thus, as we have seen, one of the matters which the commissioners were to determine

in the first instance, and as preliminary to a settlement of the question whether a drainage district should be organized at all was, whether the proposed district would embrace all the lands that would be damaged or benefited, and if not, to report what additional lands would be so affected. After such preliminary question was settled, the commissioners were required to obtain proper surveys, profiles, plans and specifications, and in case, in their subsequent proceedings to organize the district, they found that the boundaries, as proposed in the petition, would embrace lands not benefited, or failed to include lands which would be benefited, they were required to so change said boundaries as to exclude the former and include the latter. Due notice of the application to the court for the confirmation of the commissioners' report was required to be given, and every person interested was at liberty to appear and contest it, and in such contest they were at liberty to show that their lands included in the proposed district, or any part of them, would not in fact be benefited, and if such showing was made, it was clearly the duty of the court to so amend the proposed boundaries of the district as to exclude all lands thus shown not to be benefited. The order confirming the commissioners' report was by the statute made conclusive of the due organization of the district and of its boundaries, and it therefore became, unless reversed on appeal, equally conclusive of the fact that all lands included within the district would, in some material degree, be beneficially affected by the proposed work. The County Court, during the pendency of the proceedings for the organization of the district, was made the proper and exclusive forum for litigating that question, and those who failed to appear and assert their rights and those who asserted them unsuccessfully were alike concluded by the decision of the court.

Not only is this so, but the provisions of the act warrant the further conclusion, that the jury impaneled to assess damages and benefits had nothing to do with the question whether particular tracts of land included in the district would or would

not in fact be benefited by the proposed drainage system. That had already been passed upon and determined in the organization of the district. Their duty, so far as the assessment of benefits was concerned, was simply to apportion the entire benefits among the several tracts of land included in the district in the ratio in which benefits would result to the respective tracts from the improvement. The policy of the statute manifestly was, to treat each tract of land included in the district as a unit, and to apportion to it its proportionate share of damages and benefits. The language of the statute is: "In making such assessment, the jury shall assess the dämages and benefits in favor of and against *each tract* separately, in the proportion in which *each tract* of land will be damaged or benefited." It may be that only a portion of the particular tract in question, or of any other tract in the district, was wet or overflowed land so as to need drainage, but it requires no argument to show that the drainage of a pond or slough, or any other wet portion of a tract which is partly wet and partly dry, will enhance the value, not merely of the particular portion drained, but of the whole tract. As therefore the whole tract would be beneficially affected by the drainage of only a part, there was nothing illogical, unreasonable or oppressive in deeming the entire tract benefited and in throwing the burden equally upon every part of it.

It follows that the jury in the present case, in attempting to determine that only a portion of the tract of land in question was in fact benefited, considered a matter with which they had nothing whatever to do, and their finding, to that extent, is merely extra official and nugatory. It is a finding which has no proper place in the assessment roll, and therefore can not be considered for any purpose. If then we reject it as surplusage, as it manifestly is, there remains a proper assessment of damages and benefits upon the entire tract of land, and all uncertainty and ambiguity in the assessment roll disappears. The assessment was in fact and in law upon the entire 160

acres, and must be deemed to be in no way affected by the attempt by the jury to pass upon a question which was not before them.

Another question raised by counsel for the defendants is, that, even if the assessment in question is held to be regular and in conformity with law, so as to vest in the complainant a lien therefor upon the land of the defendants, a court of chancery has no jurisdiction to foreclose said lien and decree the sale of the land assessed for its satisfaction. By the bill, as originally filed, the complainant attempted, apparently, to bring the case within the provisions of section 253 of the General Revenue Law of 1872, as amended May 30, 1881. Starr & Curtis, 2110. The bill therefore was brought in the name of the People of the State of Illinois, for the use of the drainage district in question. It being afterward supposed that the complainant's proper remedy was under the provisions of section 72 of the "Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," approved June 27, 1885, the bill was amended by striking out the name of the People of the State of Illinois, and the bill was thereafter prosecuted in the corporate name of said drainage district.

Can the bill be prosecuted under the provisions of said section 72? That section, so far as it is material here, is as follows: "Any and all assessments made under any law of this State heretofore in force for the organization of special drainage districts, as also all assessments or levies hereafter made under the provisions of this act, shall be taken, held and considered to be a lien upon each and every tract of land or property assessed in such district, to the extent and amount of the proportionate share assessed and levied against the same. * * * In case the owner or owners of any lands lying in said district, and which are assessed, fails or neglects to pay any assessment or assessments, installment or installments, tax levy or levies, when due, and the same are not collected

on or before the annual sale of lands for non-payment of taxes,. the commissioners of such drainage district may file a petition in the Circuit Court of the county in which the land or property upon which such assessment, installment or levy has not been paid, for a foreclosure of such lien, and the commissioners. may proceed in their corporate name and capacity to foreclose such lien as provided by law." Laws of 1885, p. 105.

It is urged, in the first place, that said section, so far as it applies to drainage districts organized under other or former laws, is expressly limited to "special drainage districts," and that the complainant was neither organized as a "special drainage district," nor under a law providing for the organization of any class of districts under that name. We are not disposed to decide the question thus raised, since there seems to be another and more serious difficulty in the way of maintaining the bill under the provisions of said section 72.

The General Assembly, at its session in 1879, passed two entirely separate and distinct drainage acts, the first being entitled, "An Act to provide for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts." The other was entitled, "An Act to provide for the organization of drainage districts, and to provide for the construction, maintenance and repair of drains and ditches, by special assessment on the property benefited thereby." Both acts were approved May 29, 1879, the first taking effect on the day it was approved, and the second on the 1st day of July following. Each contained the following provision: "This act shall not be construed to repeal or interfere with any other law on the subject of drainage passed by this General Assembly." The first of these acts has sometimes been termed the Levee Act, and the second the Farm Drainage Act, and those terms will be used in this discussion for the purpose of distinguishing them.

Each act was amended by separate acts in 1881 and again in 1883, and in 1885 two separate acts were passed by the General Assembly, the one purporting to be a revision and amendment of the Levee Act and the several acts amendatory thereof, and containing the following provision: "This act shall not be construed to interfere with the execution and enforcement of other laws on the subject of drainage passed by this General Assembly." The other act, being the one containing said section 72, is declared to be "an amendatory revision and consolidation" of the farm drainage act and the two acts amendatory thereof, and said act, after repealing the three acts revised and consolidated, and certain other prior acts, (but not including the Levee Act or any of its amendments), provides as follows: "This act and this repealing section shall not affect other independent laws for drainage and levees not herein mentioned, but shall be construed as an independent act, not affecting other independent drainage laws, except as it is a codification and amended successor to the first three acts mentioned in the repealing section, and the special provisions of this act for their own class of districts shall apply only to such districts, but the general provisions applicable to all districts shall apply to all districts provided for by this act."

The provisions above cited render it clear that the General Assembly has undertaken to enact two entirely separate and independent codes of law applicable to the subject of drainage and the organization and government of drainage districts. While ordinarily acts passed by the General Assembly at the same session and relating to the same subject will be construed together as forming one body of law, yet this is so only by virtue of a rule of construction which must yield to the legislative will when properly expressed. It does not admit of doubt, we think, that it was the intention of the Legislature to keep these two codes of law entirely distinct, so as to subject drainage districts organized under one act only to the rules provided by that act, the provisions of the other inde-

pendent act having in such case no application. This it was clearly competent for the Legislature to do, and we think their intention to produce that result is too clearly expressed to admit of any possible question.

The corporation seeking to foreclose its lien in this case was organized under the Levee Act, and it is subject therefore only to the provisions of that act. The section under which the present bill is sought to be prosecuted is found only in the Farm Drainage Act, and therefore, by the express terms of that act, can have no application to districts organized under the Levee Act. We find therefore no warrant for the present proceeding in said section 72 of the Farm Drainage Act.

The rule is settled, at least in this State, that in the absence of a statute expressly conferring it, a court of chancery has no jurisdiction to entertain a bill for the foreclosure of the lien upon real estate given by the statute for taxes and assessments levied thereon. *People* v. *Biggins,* 96 Ill. 481; Cooley on Taxation, 2d Ed., 450. It remains to be seen therefore whether the bill for the collection of the assessment in this case can be maintained under the provisions of section 253 of the Revenue Law. It is provided by section 26 of the Levee Act, as amended in 1881, and the same provision is carried into the revision of 1885, that assessments levied by districts organized under that act shall be a lien upon the lands assessed the same as other taxes, and that such lien shall continue until such assessments are paid. It is also provided by section 34 of said act as amended, and also by the revision of 1885, that if any assessment or installment thereof is not paid when due, a certified list of the delinquent lands shall be returned to the county collector of the county in which such lands shall lie, on or before the 10th day of March next after such assessment or installment shall become due, and that it shall be the duty of the county collector to whom such return is made, to transfer such delinquent lands to the tax books in his hands, and it is provided that "the like

proceedings shall be had, and with the like force and effect, in the collection of such delinquent assessment or assessments or installment, or annual amount of benefits imposed, with interest, and the sale of said land for the non-payment thereof, as in ordinary collections of State and county taxes by county collectors, and of sales of real estate by them for such non-payment, and of redemption from such sales."

While the foregoing provisions do not in express terms make assessments by these drainage districts subject to the provisions of section 253 of the Revenue Law, they are provisions *in pari materia* with the Revenue Law in such sense as will entitle the two acts, so far as this subject is concerned, to be construed together. So far as the duties and powers of county collectors go, these assessments are placed upon the same footing and are made subject to the same rules and the same mode of proceeding with ordinary State and county taxes.

Section 253 of the Revenue Law, after declaring that taxes upon real property, together with all penalties, interest and costs that may accrue thereon, shall be a prior and first lien on such real property from and including the 1st day of May in the year in which the taxes are levied, until the same are paid, provides that such lien "may be foreclosed in equity, in any court of competent jurisdiction, in the name of the People of the State of Illinois, whenever taxes for two or more years upon the same description of property, shall have been forfeited to the State, and may be sold under the order of the court by the person having authority to receive State and county taxes, with the same notice to interested parties and right of redemption from said sale as is now provided by law."

It is true said section uses only the word "taxes" but we are of the opinion that, by a proper construction of said statute, that word may fairly be understood as including special assessments, so as to authorize a foreclosure in equity of the lien given by law for such assessments. If this were otherwise doubtful, it seems to be set at rest by section 294 of said act,

which defines the words "tax and taxes" as therein used. That section provides that the words and phrases therein defined, whenever used in said act, shall be construed to include in their meaning the definitions therein given, whenever it shall be necessary to a proper construction of said act. The words "tax" and "taxes" are there defined as follows: "Any tax, *special assessment,* or costs, interest or penalty, imposed upon property." Giving then to the word "taxes" the definition here given, it follows very clearly that the right to foreclose the lien of the assessment in this case by bill in equity is given by said section 253. See *Blake* v. *People,* 109 Ill. 504.

The present proceeding is defective, however, in that it has been prosecuted, since the amendment of the bill, in the name of the drainage district, instead of the name of the People of the State of Illinois, as provided by said section 253. For that defect the decree will be reversed, and the cause will be remanded to the Circuit Court with leave to the complainant to amend the bill so as to make it conform to the requirements of said section, and for further proceedings.

*Decree reversed.*