(No. 19418.—

THE CACHE RIVER DRAINAGE DISTRICT, Appellee, *vs.*
R. H. DOUGLAS *et al.* Appellants.

*Opinion filed December 20, 1929—Rehearing denied Feb. 5, 1930.*

BOYER & LEONARD, for appellants.

H. A. EVANS, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

The commissioners of the Cache River Drainage District filed their petition in the county court of Massac county for the levy of an assessment of $3610 for cleaning and restoring the original grade of Hackberry ditch of sub-district No. 2 of the Cache River Drainage District. The petition alleged that a petition was filed with the commissioners signed by a majority, in numbers and amount, of the land owners of the sub-district, showing that the main ditch in the sub-district in certain places had become filled with dirt to a depth of from two to five feet, and that the bottom of the ditch was above the outlet of the tile drains emptying therein, thereby holding the water upon the lands, destroying the crops and injuring the land, and that the annual assessment of benefits, as provided in section 117½ of the Levee act, had been made for the repairs of the district but was insufficient. The prayer was for an order to levy the assessment. The court ordered the assessment to be made and an assessment roll was made and filed. Appellants, R. H. Douglas, Lewis Marlman, H. E. Walter, W. A. Victor and R. J. Main, filed objections to the assessment on the ground that their lands will not be benefited by the work proposed; that they have already paid in former assessments more than the lands are benefited by reason of any work done or proposed to be done and that the lands are assessed more than their proportionate share of the cost of the improvement. There was a trial by a jury, which viewed the land, the assessment roll, with some modifications, was confirmed, and an appeal has been prosecuted to this court.

It is insisted that the verdict and judgment are contrary to the manifest weight of the evidence.

The Cache River Drainage District was organized in 1911. It comprises 68,000 acres of land in Union, Johnson, Pope, Pulaski and Massac counties. It includes all of the lands of the Cache river basin, which extends east and west through the district thirty miles between the Ozark mountains on the north and the bluffs north of the Ohio river on the south. The Cache river drains this basin, and before the district was formed it flowed sluggishly through the district in a southwesterly direction and emptied into the Ohio river above Cairo. The river had very little fall, the basin was covered with ponds, lakes and bayous to a depth of ten feet or more and the water ran off slowly. A large amount of water from the hills on the north and south emptied into this basin through the Cache river and its tributaries. One of the streams flowing into this basin was Post creek, which arose in the hills on the south side of the basin and flowed north into the Cache river on the south side of the basin, near the middle. One of the drainage projects of the main district was the construction of Post creek cut-off, which reversed the flow of Post creek and caused it to flow south. It was then cut through the hills south of the basin about three and one-half miles and emptied into the Ohio river. This cut-off tapped the basin about the center on the south side and carried a large portion of the water into the Ohio river twenty miles above the point where the Cache river emptied into the Ohio.

Sub-district No. 2 was organized in 1914 and consists of about 1776 acres east of this cut-off and south of Cache river. This territory before any drainage work was done was drained by a water-course known as Hackberry slough, which emptied into Post creek. A stream known as Old Slough Bed had its source in the central and eastern part of the sub-district and flowed generally west, with poorly-defined banks. It then turned northwest across the Chicago and Eastern Illinois railroad, then turned in a southerly direction, again crossing the railroad, and at a point on

Main's land it emptied into Post creek. The work in the sub-district consisted of the construction of what is called Hackberry ditch, which consisted of the deepening and widening of Hackberry slough from a point where it entered Post creek, and it then follows the same curves and turns of the original slough. Just south of the railroad an artificial ditch was dug east, parallel with and south of the railroad, to the east end of the sub-district. Post creek cut-off was the outlet to Hackberry ditch.

There is a range of hills on the south side of the sub-district, and there is a tongue of high hill land which belongs to appellants Douglas and Victor, which projects north from the south side of the sub-district near its west end. East of this tongue and north of the hills is a large body of land bounded by the old slough bed and designated in the record as Hackberry pond or the Goose Egg. This land before the construction of the improvement was a swamp and was used principally for hunting purposes. The soil was rich, fertile and black, was seven or eight feet deep, and was formed by the rotting of vegetation. Before the improvement, water stood three or four feet deep on this land. The hill land is red and white clay. The land west of the high tongue on the lands of Douglas and Main has a white soil, except a strip two or three hundred feet wide along the line of the old slough. The water which stood in Hackberry slough, before the improvement, on the lands of Douglas and Main, from the railroad south to Post creek, was caused by the overflow from the hills through Post creek, and the water backed up into Hackberry slough. Hackberry slough from the railroad south was from two to three hundred feet wide and had well-defined banks.

There have been seven assessments against the lands of appellants in the main district, and in sub-district No. 2 there have been three previous assessments. The first assessment in the sub-district was for $6694.28, which was inadequate to complete the ditch. A second assessment of

$6760.76 was levied, which completed the ditch. Afterwards sewers were placed under the railroad and a third assessment of $2677.71 was levied.

Appellant Marlman owns 20 acres of land at the northeast corner of the sub-district, on a line of hills which form the north boundary of the district. He has paid $26.25 in the main district, $146.77 in the sub-district and was assessed $32.40 in this case, which was reduced by the jury to $21.60. Walter owns 80 acres at the southeast corner of the sub-district, among the hills which form the south boundary of the district. He has paid $249.44 in the main district, $307.67 in the sub-district and was assessed $86.40 in this case, which was reduced by the jury to $63.80. The lands of Douglas, Main and Victor lie in a body at the west end of the sub-district and comprise the tongue of high land above referred to and the land to the west thereof. Douglas was assessed on 316.79 acres. In the main district he has paid $1459.13, $2127.20 in the sub-district and was assessed $494.68 in this case, which was reduced by the jury to $368.20. Main owns 40 acres, on which he has paid $248.99 in the main district, $391.39 in the sub-district and was assessed $86.40 in this case, which was not changed by the jury. Victor owns 80 acres, on which he has paid $311.32 in the main district, $489.14 in the sub-district and was assessed $108 in this case, which was reduced by the jury to $86.40. This assessment covers 536.76 acres, with a total assessment of $516.40.

Appellants insist that the great weight of the evidence shows that their lands are high, they have so much fall that they were drained, for all practical purposes, before Hackberry ditch was dug, and that only sanitary benefits were received by these lands; that any sanitary benefit, or any slight benefit to any part of the lands which was wet, has been paid for many times in the assessments in the main district and in the sub-district; and that the assessments in this case are out of proportion to the benefits which each

tract of land will receive as compared with the total benefits to be derived by all the lands of the sub-district, and particularly the rich, black lands in Hackberry pond.

Upon the trial appellee offered the assessment roll in evidence and rested. Under section 17a of the Levee act the assessment roll made a *prima facie* case for appellee and placed the burden upon appellants to establish their defense. Eleven witnesses testified for appellants, including four appellants, one objector who did not appeal and one engineer. Most of these witnesses testified that the lands of appellants were not benefited by the cleaning of the ditch. There were eight witnesses who testified for appellee, none of whom testified in money value as to appellants' benefits but some of them testified that the lands of appellants would be benefited and increased in value. Section 17b of the Levee act provides that the jury, in case any party in interest shall so request, shall proceed to examine the lands to be affected by the proposed work, they shall ascertain to the best of their ability and judgment the benefits which will accrue to the lands to be affected by the proposed work, and in their verdict they shall set down in proper columns the names of the owners, a description of the land, the number of acres in each tract and the amount of benefits assessed. In making up their verdict they shall take into consideration as evidence their view of the premises and consider their views together with the other evidence admitted, and their verdict shall be taken and held to be the verdict upon all questions of benefits and damages arising in the proceeding. Under this section of the statute the jury not only had the right to consider the evidence offered upon the trial, but they also had a right to consider as evidence the knowledge and information which they gained from a personal view of the lands. By including these lands in the original district and in the sub-district the owners were concluded from claiming later that the lands were not benefited by the original improvements. (*Gauen* v. *Drainage District,* 131 Ill. 446.)

If it was necessary for drainage purposes in the first instance to construct Hackberry ditch, it is necessary to clean out and repair the ditch so that its benefits will not be lost to the lands of the district. If the ditch is not cleaned and the outlet to the tiles remains stopped, the benefits to the lands of the sub-district must of necessity be materially lessened if not entirely destroyed. If the lands of appellants were benefited by the original improvement, the natural presumption is that they will be benefited by cleaning the ditch and keeping it in operation. From the entire record we cannot say that the evidence introduced by appellants was sufficient to overcome the evidence offered by appellee.

Complaint is made of the sixth instruction given on behalf of appellee, which told the jury that while they might take into consideration the whole amount of the assessments paid, both in the main district and in the sub-district, as to each tract of land, they should also take into consideration the total amount of benefits derived by each tract in the main district and in the sub-district, and if they found that no tract of land has been assessed in any amount greater than the benefits received by such tract or in a greater amount than its proportionate share of the cost of the improvements, they should not reduce the assessment against any such tract or exempt it from the payment of benefits assessed against it. It is insisted that this instruction should have been limited to the benefits and payments in the sub-district, as was stated in the first instruction given on behalf of appellants. In their objections to the assessment appellants contended that any benefits received have been paid many times in the seven assessments in the main district and the three assessments in the sub-district. Evidence as to the various amounts paid was admitted, and in their brief the question of benefits is argued at considerable length. They tried their case upon the theory of their objections, and even if the instruction was erroneous they are in no position to complain.

It is also insisted that the lands of appellant Main are assessed on one or two acres which have been taken by the district as a right of way. No such objection was made by appellants in their written objections or in the trial court and no evidence was offered on this point. The jury in their verdict certified that they only assessed benefits against each tract affected by the work. In this condition of the record appellants will not be heard to claim that land was assessed for benefits which belonged to the district.

We find no reversible error, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*