WILLIAM McCALEB *et al.*

*v.*

THE COON RUN DRAINAGE AND LEVEE DISTRICT.

*Opinion filed June 19, 1901.*

1. APPEALS AND ERRORS—*when objection that drainage jury was improperly empaneled is waived.* An objection that the jury called to assess benefits and damages in a drainage case was irregularly empaneled is waived on appeal, where no such objection is assigned as error in the court of review and the parties voluntarily submitted the cause for trial before such jury in the court below.

2. SAME—*objections not covered by assignment of errors cannot be raised.* Objections not brought to the attention of the trial court in any manner nor assigned as error cannot be raised as ground for reversal in the court of review.

3. DRAINAGE—*petition to abandon ditch—when decision of question is for the court.* Under section 44 of the act of 1879, for the construction, maintenance and repair of drainage ditches, as amended in 1885, (Laws of 1885, p. 127,) if the petition to abandon a proposed ditch before the contract is let is signed by a majority of land owners, and not by two-thirds, the question whether the relief shall be granted is for the court; and the fact that a greater number of witnesses testify for petitioners does not warrant a court of review in declaring the decision against petitioners is erroneous.

4. SAME—*when instruction as to farm bridges in drainage case is erroneous.* The act of 1879, for the construction of ditches and drains, (Laws of 1879, p. 142,) contains no provision authorizing a district to construct farm bridges across drains at the expense of the district, and hence it is error to instruct the jury that it is the duty of the commissioners to construct such farm bridges as may be necessary for the proper use of the lands, the cost to be paid out

of the funds of the district, and that the jury are at liberty to take into consideration the benefits, if any, arising from the construction of such bridges, in making the estimate of damages or benefits.

5. SAME—*duty of jury on the hearing of objections to assessment roll.* Under section 20 of the Drainage act of 1879, as amended in 1885, (Laws of 1885, p. 118,) and section 21, as amended in 1895, (Laws of 1895, p. 165,) it is incumbent upon the jury, in determining objections to the assessment roll previously prepared by them, to make such corrections in the matter of damages or benefits relating to tracts of land objected for, as shall "seem" or be "deemed" by them to be "equitable" as well as "just and best."

WRIT OF ERROR to the County Court of Morgan county; the Hon. D. F. KING, Judge, presiding.

E. P. KIRBY, and J. M. RIGGS, for plaintiffs in error.

WORTHINGTON & REEVE, for defendant in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The plaintiffs in error, William McCaleb and E. P. Kirby, have by this writ of error caused to be brought into this court for review the order entered in the county court of Morgan county denying and ordering to be dismissed the petition of the plaintiffs in error and others praying for an order directing the commissioners of the defendant in error district to abandon the main ditch, the Yeck ditch and the Spring Run ditch in said district, and also to bring in review the judgments entered in said county court confirming the allowance of damages to and assessment of benefits against the lands of the plaintiffs in error lying within the limits of the defendant in error district.

The defendant in error levee and drainage district was organized under an act entitled "An act to provide for the construction, reparation and protection of drains, etc., and to provide for the organization of drainage districts," approved May 29, 1879. (Hurd's Stat. 1899, p. 664.) The petition that the said ditches be abandoned was framed under section 44 of the said act, (Hurd's Stat.

1899, p. 678,) and was not signed by two-thirds in number of the owners of lands in the district, but was signed by a majority of such land owners. Whether the relief asked by the petition should be granted was therefore, under the express provision of said section, for the determination of the court after hearing all the material facts pertaining thereto.

The petition set forth as grounds for the proposed abandonment of the said ditches, as follows: "That as said district was so organized, the main ditch as proposed to be made, as shown by the official plat of said district, will run through Dickerson lake, within said district, and these petitioners learned from the evidence heard on the question of the approval of the commissioners' report, that neither the commissioners, nor any of them, nor the engineers employed by them, have made any examination of the bottom of said lake to ascertain the nature thereof; that these petitioners have made such an examination, and have learned that the surface of the bottom of said lake is of such a nature that it will not support a levee or other superstructure, and that the sub-soil underlying the bottom of said lake is composed of what is usually called 'quicksand,' to a depth many feet deeper than the proposed ditch; that these petitioners verily believe it is not only not feasible to construct the said main ditch through said lake as proposed, but that it is absolutely impossible to do so; that it will be found, when attempt is made to construct said main ditch as proposed and to throw up proposed levees on both sides, there is no foundation upon which said levees can be thrown up and maintained; that the surface soil and sub-soil constituting the bottom of said lake is so soft and unstable that as fast as a dredgeboat throws up the material on the sides of the main ditch, as proposed, the weight thereof will cause the sides of the said ditch to cave and slide back into the ditch, and it would be impossible to construct and maintain said proposed ditch

except by methods that would cost many times the value
of all the lands in said district, as these petitioners verily
believe; that it is these petitioners' wish that said main
.ditch proposed. to be constructed through said lake be
abandoned, in accordance with the provisions of the stat-
ute of this State; that the proposed Yeck ditch and the
proposed Spring Run ditch in said district are to empty
all their water in said main ditch as proposed, and can
not be successfully constructed, according to the pro-
posed plan, unless said main ditch be constructed, and
should therefore be also abandoned."

The complaint is, the order of the court in denying
the prayer of the petition was against the weight of
the evidence on the points involved. The testimony pro-
duced on behalf of the petitioners tended to show that
the waters of Dickerson lake rested upon a bed of de-
cayed or decaying vegetation several feet in thickness,
and that beneath such deposit of vegetation there was
an underlying strata of quicksand extending below the
bottom of the said main ditch as proposed to be extended
across the lake, and that the bed of the lake would not
support the banks of such ditch and the levees which
the plans and specifications of the work provided should
be constructed, and therefore that it was not feasible or
possible to construct said main ditch in and across said
lake. The Yeck and the Spring Run ditches were lateral
drains to the main ditch, and were, of course, to be aban-
doned if the main ditch should not be constructed. Wit-
nesses were, however, introduced in opposition to the
prayer of the petition, who testified that they had bored,
or assisted in boring, holes in the bed of said Dickerson
lake along the route of the said main ditch in and across
the lake and to the full depth of the proposed ditch;
that the waters of the lake rested on a strata of decayed
vegetation about one foot in depth; that beneath that
there was blue mud and yellow clay, and not quicksand.
Earth or soil, which it was testified had been so taken

from several of the holes thus made in the bed of the lake and carefully preserved, was brought into court, identified by the witnesses and exhibited to the judge of said court.   Each of the contending parties produced in court, as an expert, a civil engineer, who testified *pro et con* as to the feasibility or possibility of constructing the ditch in the bed of the lake.   In point of mere numbers of witnesses the preponderance was slightly with the plaintiffs in error, but that alone will not warrant the declaration the decision was palpably erroneous. The court saw and heard the witnesses, had before it for inspection samples of the substance of which, as the evidence tended to show, the bed of the lake was composed, and enjoyed other facilities far better than this record affords to us, for determining the truth of the matters in controversy.   Our conclusion is, we would not be warranted in refusing to accept the judgment of the court as to the facts established by the proof.   Moreover, the plaintiff in error McCaleb, as one of the commissioners appointed, before the district was organized, to investigate and report as to the feasibility of the proposed organization of the district, presented a minority report recommending another route for the ditch than the main ditch which the majority of the commissioners recommended, but the majority report was, on a hearing, accepted and approved by the court.   The petition to abandon such main ditch, therefore, savored much of a mere attempt to re-open and have re-heard the controversy that had been once heard and determined.   It is not complained the court in this investigation erred in any ruling as to the admissibility of evidence or otherwise fell into error in any matter of law.   The order dismissing the petition for the abandonment of said ditch is affirmed.

The plaintiffs in error complain in their brief that the manner in which the jury to assess benefits and damages were empaneled was irregular and operated to deny to

them the benefits of the right of trial by jury. They voluntarily submitted their cause for trial to the jury which had been empaneled, and have not assigned any such objections as for error in this court, therefore any complaints of this nature, if any, which they might have preferred must be regarded as having been waived. *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hock*, 118 Ill. 587.

The objection that the judgments for damages and benefits against the lands of the plaintiffs in error do not indicate the denomination of money for which they were, respectively, rendered, or that it is not expressed in the judgments by apt marks, dollar-marks or other characters that such judgments, or either of them, are for any sums of money, was not in any manner brought to the attention of the trial court and is not here assigned as for error, and therefore cannot be raised in this court as ground for reversal. *Cochran* v. *Village of Park Ridge*, 138 Ill. 295; 8 Ency. of Pl. & Pr. 287.

The plaintiff in error McCaleb owned 80 acres of land in section 4, township 15, range 13, in Scott county, and 160 acres in section 35, township 16, range 13, in Morgan county. The 80-acre tract in Scott county was assessed for benefits in the sum of $1150, or $14.37 per acre. The 160-acre tract in Morgan county was assessed for benefits in the sum of $2128, or $13.30 per acre. The plaintiff in error Kirby owned 160 acres in said section 4, in Scott county, against which benefits in the sum of $1050 were assessed. The right of way of the ditch was located across this tract of land, and $58.32 was allowed as the just compensation to be paid for land taken and damages for such right of way. This latter sum was, in accordance with the provision of section 17 of the said act, deducted from the amount assessed against the tract for benefits, and judgment entered against the tract for the balance, namely, $991.68. No objection was preferred in the trial court to this mode of paying the just compensation allowed for the right of way, nor is it assigned as

for error in this court that a different course should have been pursued. The matter cannot now be urged as reason for reversing the judgment. (8 Ency. of Pl. & Pr. 287.) In *Ginn* v. *Moultrie, etc. Drainage District*, 188 Ill. 305, we held damages allowed as just compensation for land taken by a drainage district organized under the act in question could not be paid by deducting the same from the benefits against the land, but in that case we held the right to present the question to this court had been preserved.

On the hearing before the jury of the question of benefits and damages the contending litigants produced substantially an equal number of witnesses, and each had among the number a civil engineer competent to give an opinion as an expert. The substance of the testimony of the witnesses for the plaintiffs in error was, that the lands of the plaintiffs in error would not be benefited by the construction and operation of the ditch as proposed, and some of the witnesses expressed the opinion that the lands of the plaintiffs in error in Scott county would be damaged by the construction of the improvement. The testimony given by the witnesses in behalf of the defendant in error district was, in effect, that the lands of the plaintiffs in error would be benefited in a greater or less degree by the proposed improvement, but none of them assumed to state in dollars and cents the amount of such benefit. The total assessment adjudged to be paid by plaintiff in error McCaleb on 240 acres of land is $3278. The benefits to the 160-acre tract owned by Kirby aggregate $1050. These sums seem heavy and burdensome, especially in view of the fierce conflict of testimony on the point whether the lands were benefited at all. Counsel for the defendant in error district, speaking in their brief as to the conflict of the evidence, say: "In this case there is just as much, or more, evidence to support the finding of the jury as to benefits as was introduced by the plaintiffs in error in opposition to it,—that is, to say

nothing of the personal view of the jury. The result of the personal examination may have been such as to fully justify the assessment of benefits as made, even if it were clear the preponderance of the evidence as preserved in the record was against such benefits." The evidence being so nearly equally balanced, the rule so frequently announced that it was essential the jury should have been accurately and correctly instructed as to the law applicable to the contention must be applied.

At the request of the defendant in error district the court gave the jury the following instruction:

"You are further instructed that it is the duty of the commissioners of said district to construct such farm bridges as may be actually necessary for the proper use of the lands in said district, under the direction of the court, and that the cost of constructing such bridges shall be paid out of the corporate funds of the district; but you are at liberty to take into consideration the benefits, if any, arising from the construction of such bridges, in making your estimate of the damages or benefits upon any tract or tracts of land in said district."

The act under which the defendant in error district was organized does not contain any provision requiring the district to construct farm bridges at the expense of the district. Section 74 of an act entitled "An act to provide for drainage for agricultural and sanitary purposes," approved June 27, 1885, (Hurd's Stat. 1899, p. 709,) provides that the commissioners of highways, who are by that act made *ex officio* drainage commissioners, shall construct and maintain one bridge or proper passageway over each open drain where the same crosses any enclosed field or parcel of land; but the provisions of that act do not apply to a levee and drainage district organized, as is the defendant in error district, under the act approved May 29, 1879, (Hurd's Stat. 1899, p. 664,) usually called the "Levee act." (*Gauen* v. *Moredock Drainage District,* 131 Ill. 446.) Counsel for the defendant in error district con-

cede the district is not required by law to construct farm bridges, and in addition to such concession say: "We know of no decisions of this or any other court requiring drainage districts organized under said act to construct farm bridges." It was therefore clearly erroneous to advise the jury that they might take into consideration the benefits which would or might accrue to any tract or tracts of land in the district from the construction of such bridges. The main ditch of the district enters the 160-acre tract of land belonging to the plaintiff in error Kirby at a point east of the center of the north line of the tract and passes thence in a south-westerly direction through the land to the point of departure therefrom, which is at a point south of the center of the west line of the tract. In estimating the compensation to be paid by the plaintiff in error Kirby the difficulty of access to the different parts of his land and the inconvenience of communication between them caused by the construction of the ditch were proper elements of damage. (*Rock Island and Eastern Illinois Railway Co.* v. *Gordon*, 184 Ill. 456.) If the statute had made it incumbent on the district to construct and maintain such farm bridges across the ditch as should by the court be found to be proper and necessary for the use of the land owner, and thereby to relieve, in part, against the inconvenience of passing and re-passing from the land upon one side of the ditch to the land upon the other side, it would have been entirely proper to so advise the jury, for the reason the damages to be awarded to the land owner would be thereby reduced. The effect of the instruction as to the lands owned by the plaintiff in error Kirby over which the ditch was to be constructed was to authorize the jury to reduce the amount of the compensation to be allowed him for land taken and damaged, on the erroneous view the district would be compelled by law, under the direction of the court, to provide him with such bridges as might be found necessary and proper to enable him to reach each part of his land from

the other, and cross and re-cross the ditch with his teams, wagons and farming implements. Nor can it be said this is the measure of the injury caused by this instruction. The instruction is so drawn as to indicate that from the exercise of the duty which the instruction declares the law charged upon the commissioners to build such bridges, benefits may flow to any and every tract of land in the district. The language of the instruction is, "it is the duty of the commissioners of said district to construct such farm bridges as may actually be necessary for the proper use of the lands in said district," (not merely lands which are intersected by the ditch, but "the lands in said district,") and that the jury "are at liberty to take into consideration the benefits, if any, arising from the construction of such bridges, in making your estimate of the damages or benefits upon any tract or tracts of land in said district." The instruction does not only proceed upon the theory that the jury may consider the supposed legal duty of the commissioners to construct bridges in reduction of the amount of compensation to be allowed for lands taken or damaged by the construction of the ditches, but the further idea is conveyed to the jury that tracts of land not bisected by the ditch may be benefited by compliance on the part of the commissioners with the supposed duty of providing such bridges as may be actually necessary for the proper use of any and every tract of land in the district. The instruction, therefore, may not only have operated to reduce the award of damages to the plaintiff in error Kirby as just compensation to him for lands taken and damaged, but may have operated to increase the estimate or assessment of benefits against his lands and also against the lands of the plaintiff in error McCaleb.

Other of the instructions are subject to criticism. The issue was founded on the objections filed by the plaintiffs in error to the assessments of damages and benefits against their lands as shown on the assessment roll made

and reported to the court by the same jury before whom the objections were heard.   Section 17 of the act, with reference to the duty of the jury in making this assessment roll, requires that the jury, after being empaneled, "shall proceed to examine the lands to be affected by the proposed work, and ascertain, to the best of their ability and judgment, the damages and benefits which will be sustained by, or will accrue to, the lands to be affected by said proposed work."   Section 18 provides that the jury shall, in making the assessment, award damages and benefits, etc., according to the "best judgment" of the jury.   The action so taken by the jury under each of the sections is *ex parte* in character,—the land owners not being allowed to participate at this stage of the proceedings,—and the requirements of the sections are that the jury shall exercise the "best of their ability and judgment" in examining the lands and ascertaining the damages sustained by and benefits accruing to each tract of land, etc., and shall award and assess such damages and benefits according to their "best judgment."   After objections to the assessment roll have been filed and the evidence in support of such objections and in opposition thereto have been heard by the jury, the duty then devolves on the jury to determine whether corrections and changes shall be made in the estimate of damages or benefits theretofore by them allowed to or against any tract of land.   Section 20 provides that in determining whether such corrections or changes shall be made the jury shall decide "as shall seem to them just and equitable," and section 21 of the act, so far as it bears on the matter of the duty of the jury in deciding the issues made under objections to the assessment roll after the hearing of such objections, is as follows: "After such hearing, the jury shall retire for the consideration of their verdict, which shall consist of making such amendments and corrections to such assessment roll as to them shall seem best and equitable from the law and the evi-

dence in the case, including the personal view of the lands made by them." Each of said sections 20 and 21 makes it incumbent on the jury, in determining the objections to the assessment roll previously prepared by them, to make such corrections in the allowance of damages or assessments of benefits against any tract of land on the roll for which objections have been filed, as shall "seem" or be "deemed" by them to be "equitable" as well as "just and best," and these are the only sections which relate to the duty of the jury in arriving at a verdict after the objections have been heard.

Instruction No. 11 given at the request of the defendant in error district advised the jury they should make such corrections in the assessment roll as were "required in their judgment," and instruction No. 3, in the same behalf, is that the corrections are to be made "according to the best judgment of the jury." The equities, if any, which, in accordance with the directions of said sections 20 and 21, ought to be considered and given effect by the jury, are ignored by these instructions.

The inaccuracies in the instructions which we have indicated may have availed to turn the scale, so nearly equally balanced, in favor of the district. The case is so close upon the facts the influence of erroneous instructions cannot be known.

The order of the county court of Morgan county dismissing the petition for an order directing the abandonment of the main ditch, Yeck ditch and Spring Run ditch is affirmed. The judgments assessing damages to and benefits against the lands of the plaintiff in error Kirby and assessing benefits against the lands of the plaintiff in error McCaleb are each reversed, and the cause remanded for such other and further proceedings as to law and justice shall appertain.

*Affirmed in part and remanded.*