MOSES HUTCHINS

*v.*

THE VANDALIA LEVEE AND DRAINAGE DISTRICT.

*Opinion filed October 24, 1905.*

1. DRAINAGE—*Eminent Domain act and Levee act cannot be combined.* In a proceeding to organize a drainage district under the Levee act the county court has no power to empanel a jury in the manner provided by the Eminent Domain act to assess damages for land taken or damaged, there being no attempt made to comply with the provisions of that act as to the filing of the petition.

2. SAME—*section 46 of the Levee act applies only to additional work and repairs.* Section 46 of the Levee act as amended in 1885, (Laws of 1885, p. 129,) giving drainage districts power to proceed "by any law of eminent domain," refers only to the construction of additional drains or repair of drains by districts already organized.

3. SAME—*petition to organize district does not take the place of petition required by Eminent Domain act.* The petition by land owners for the organization of a drainage district under the Levee act cannot be used as a substitute for the petition required by the Eminent Domain act to be filed by an existing corporation vested by law with the power to condemn land.

4. SAME—*assessment of damages under Levee act is void.* An assessment of benefits and damages made by a jury under the provisions of the Levee act, including damages for land taken or damaged, is void and cannot be regarded as making a *prima facie* case in favor of the district, since the provisions of the Levee act in that respect are, and have been held, unconstitutional. (*Wabash Railroad Co. v. Coon Run Drainage Dist.,* 194 Ill. 310, followed.)

5. SAME—*district may proceed under the Eminent Domain act after organization.* After a drainage district has been organized under the Levee act of 1879 it has power to proceed under the Eminent Domain act by an original proceeding to condemn land for its ditches and drains.

APPEAL from the County Court of Fayette county; the Hon. JOSEPH STORY, Judge, presiding.

This is an appeal from a judgment of the county court of Fayette county, entered on the 24th day of June, 1904, ordering that the appellee district pay to the appellant as and for his damages for lands taken for right of way for levee

217—36

purposes the sum of $334.50, and that the cost of the proceeding be taxed against said district; and further ordering and adjudging that the assessment roll be confirmed as to the benefits assessed against the lands of appellant in section 22, town 7 north range 1, east of the third principal meridian in said county in accordance with the findings of the jury, and declaring the same to be a lien upon said lands respectively as assessed against the same, and ordering the clerk of said court to extend and spread the assessment so confirmed upon the records of the court; and that the payment of said assessment and the interest thereon should become due and payable at the time or times and in the manner provided by the court.

The judgment was entered in a proceeding, begun by the filing in said county court on March 11, 1903, of a petition, praying for the organization of a special levee and drainage district by the name of the "Vandalia Levee and Drainage District in Fayette county in the State of Illinois," the boundaries thereof embracing the lands mentioned in the petition; and also praying for the appointment of commissioners in accordance with the provisions of the statute in such case made and provided, and for the execution and completion of the proposed work, and for such other and further order and decree in the premises as shall seem meet, and the nature of the case may require.

The proceeding is under the act of May 29, 1879, as amended in 1885, entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts."

The petitioners, describing themselves as the owners of lands in the proposed special levee and drainage district located in said county of Fayette, represent that they are each of lawful age, and together constitute a majority of the owners of lawful age of the land within the special levee and

drainage district described in the petition, and proposed to be organized into a special levee and drainage district, and that the owners signing the petition own in the aggregate more than one-third of all the lands contained within said proposed district; that said lands are rich and suited for agricultural purposes, if suitably leveed and protected from the annual overflows and suitably drained, but that the same are mostly low, wet and subject to annual overflows and rendered nearly valueless for agricultural purposes, and producing malarial diseases and unhealthfulness therein, and over all the adjoining lands thereto; that it is necessary for agricultural and sanitary purposes that a levee or levees and drain or drains be constructed and maintained in and upon said proposed district on the lands described in the petition as embraced within the bounds of the proposed district, setting forth particularly a description of the lands embraced within the district.   The petition further states that the lands within said bounds require a special combined system of levees and drainage, for their protection and drainage from wash and overflow; that the petitioners desire that a special levee and drainage district may be organized, embracing the lands in the petition described, for the purpose of constructing, repairing and maintaining all necessary and proper levees, embankments, grades, drains and ditches within said district that may be found to be requisite to render said lands suitable and available at all times for agricultural and sanitary purposes, and to preserve and protect the same by special assessments upon the property therein and benefited thereby; that the levee proposed is to consist of an embankment of earth four feet wide on top, etc., the earth for the construction of said levee to be taken from the ground on the river side, or outside of the enclosure of said embankment; all timber, brush, logs and debris, other than soil, clay or gravel, to be removed from the ground to be occupied by said embankment, so that the same will be a solid and durable embankment two and one-half feet above the high-water mark

of 1875; the district containing about 13,000 acres, the main ditch and lateral ditches to provide drainage for the waters of certain lakes and creeks. The petition further alleges that all the lands, embraced within the boundaries of the proposed district, are affected beneficially by the same by protection from overflow and drainage in whole or in part, and that it is necessary to provide for an annual assessment upon the lands in the proposed district to pay for the necessary annual repairs and ordinary expenses in maintaining and preserving the improvements when made. The petition sets forth the names of the owners of land in the proposed district, together with their post-office addresses and their respective interests in the tracts of land embraced within the district, etc.

On April 13, 1903, the court entered an order, finding that due notice had been given to all parties interested, that it had jurisdiction of the subject matter and of the parties, that the petition was signed by a majority of the land owners, owning more than one-third of the land within the proposed district, and that the proposed work was necessary and would be beneficial for agricultural and sanitary purposes to all the land in the proposed district, and appointing D. M. Clark, George F. Snerly and William E. Ryan as commissioners "in and for the said proposed levee and drainage district according to the bounds thereof, who shall qualify and organize as provided by the statute, and proceed thereafter under the law and make report to this court in accordance with the provisions of the statute in detail."

The commissioners qualified as required by law, entered upon the discharge of their duties, and made their report to the court, which was filed August 3, 1903. A number of objections were filed to the report, and, by order entered on September 9, 1903, the report was referred back to the commissioners to correct the same and to report back to the court on September 18, 1903, on which latter day the objections were disposed of, and the court by its order declared the district duly organized. On the same day, to-wit, September

18, 1903, an order was entered by the court, directing the commissioners "to make the assessment of damages or of damages and benefits, faithfully and impartially to the best of their understanding and judgment; to which end they each shall respectively subscribe an oath and be sworn so to do; thence proceed to make such assessment, and upon completing the same they shall fix upon a day in this court for the correction of their assessment, and shall give at least ten days' notice of such time and place and the objects of such meeting by posting and publishing notices in the manner required by the statute under which this proceeding is had." The commissioners fixed upon February 23, 1904, as the date upon which objections should be filed.

The assessment roll was completed and filed on February 2, 1904. The report of the commissioners, making assessments for benefits and damages, recited that they had taken the oath, and examined the lands, and assessed to each tract damaged its proportionate share of the entire damage, and, if benefited, its share of such benefit, and carried the balance to the proper column and assessed to each tract benefited its proportionate share of the entire cost of such benefits. The assessment roll showed tracts, belonging to the appellant in section 22 above described, one containing 28.50 acres and assessment of the same at $3.35 per acre, a total assessment of the same of $95.48; showing land taken out of the same for levee or ditch to the amount of 3.90 acres, the value of the same at $25.00 per acre, making the total value of the amount taken $97.50 and the net damage $2.02; no net benefits. The assessment roll also showed another tract, belonging to the appellant in said section 22, containing 68 acres, assessed at $3.35 an acre, total assessment $227.80; land taken for levee or ditch, 2.50 acres, valued at $25.00 an acre; total value of land taken $62.50; net benefits $165.30, etc. The roll also showed another tract in said section of 80 acres belonging to appellant, assessed at $3.35 per acre, total assessment, $268.00; net benefits $268.00;

also showing another tract in the same section of six acres, assessed at $3.35 an acre, total assessment $20.10; land taken for levee or ditch, 4.50 acres, valued at $25.00 per acre, total value of land taken $112.50; net damages $92.40. There were some other tracts mentioned in the roll belonging to appellant, but the assessment of benefits thereto seems not to have been objected to.

The appellant, by his attorneys, objected to the confirmation of the assessment against his lands, as thus reported by the commissioners, and made the following specific objections: "First, that the commissioners, heretofore appointed by this court to make assessments of benefits and damages, have no right under the statute, to make an assessment of benefits and damages, as directed by the order of this court; second, that the provision of the statute, empowering three commissioners to make an assessment of damages as against this objector for land taken, and for land damaged by the construction of said levee and drainage district and the improvements thereof, are invalid and unconstitutional; third, that there is no authority in said district for commissioners to acquire any part of its right of way or other property, or any right therein, for ditch or other purposes in the manner attempted by these proceedings, or as directed by the court herein; fourth, that the lands of this objector, situated in section 22, town 7, north range 1 east, are assessed for benefits at a higher rate in proportion to the benefits received, than other lands similarly situated in the said district; fifth, there is no authority of law for three commissioners to agree to build bridges for farm purposes for this objector; sixth, that the said commissioners, in attempting to assess the damages to the lands in said section 22 taken for the right of way for said levee and ditches, and to the lands not taken, have made assessments which are not adequate; that the said commissioners have attempted to offset the damages to the said lands taken against the benefits accruing to the lands, and not paying for the said damages in money."

On February 23, 1904, the court entered an order that the assessment be confirmed, as reported by the commissioners, as to all parties excepting those appearing and defending, and as to all those parties appearing and objecting to the assessment roll, the cause was continued to March 7, 1904. On March 7, 1904, an order was entered, directing the clerk to docket each of the objections filed to the confirmation of the report of the commissioners as to the assessment of benefits and damages, separately, and to this order the objectors by their attorneys excepted. The cause was continued until March 9, 1904, on which day the commissioners filed a reply to the objections of the appellant, and the cause was set for trial on Tuesday, March 15, 1904; and the clerk of the court was ordered by the court to issue a special venire for twelve jurors to act as petit jurors, returnable at ten A. M. March 15, 1904, to try all cases wherein objections are filed to be tried at this term of court, and to this order for the issue of a venire the appellant by his attorneys excepted. On March 15, 1904, came the parties, and the jury was called and empaneled and sworn as jurors, and an order was entered in part as follows: "It appearing to the court that only nine jurors appeared, and it further appearing to the court that this jury was drawn under the Eminent Domain act, the court designated William Metz, Adam Fink and William Fouts as jurors to finish the panel; jury empaneled and sworn to try the issues," etc. The trial was then commenced, and evidence was heard from day to day, and continued from time to time, until April 8, 1904, when the jury retired to consider of their verdict, and retired to view the premises in custody of a sworn officer; and before their retirement the jury were instructed by the court; and returned into open court with their verdict. The verdict of the jury returned findings under the head of "Damages for land taken," consisting of six columns, reciting in the first the name of appellant, in the second the description of four pieces of property, in the third the number of acres in each piece of property, in

the fourth the amount of land or number of acres taken out of each piece of property, in the fifth, the value per acre, and in the sixth, the damages, the damages being in the case of the first piece $97.50, in the case of the second, $62.50, in the case of the third, $112.50, in the case of the fourth, $62.00, (these figures being the same as those mentioned in the assessment roll already referred to,) and reciting as "total damages for land taken $334.50." Under the head of "Damages to land not taken," was the word "None." Under the head of "Assessment benefits" were five columns, containing in the first, appellant's name, in the second, descriptions of said four pieces of property, in the third the number of acres in each piece, in the fourth the amount of assessment per acre, being $3.35, in the fifth the total assessment, being for the first piece $95.48, for the second $268.00, for the third $227.80, and for the fourth $20.10; total $611.38, (being the same figures as are set forth in the assessment roll under the head of "Total assessments.") Under the findings thus showing "damages for land taken," "damages to land not taken," and "assessment benefits," the jury wrote and signed their verdict as follows: "We the jury find the above to be our verdict in cause of the Vandalia Levee and Drainage District *vs.* Moses Hutchins."

Appellant filed a motion for new trial, which was continued to the June term. On June 24, 1904, the motion for new trial was overruled, and the defendant by his attorney excepted thereto, and thereupon judgment was entered on June 24, 1904, as above stated, to which judgment appellant then and there excepted, and prayed an appeal to this court, which was allowed upon the filing of a bond of $500.00 and bill of exceptions within sixty days from June 24, 1904, the bond to be approved by the clerk. The defendant also made a motion to arrest the judgment and declare the verdict void, which motion was also overruled by the court, to the overruling of which the appellant by his attorneys then and there excepted.

Among the written reasons, filed by appellant in support of his motion for new trial besides those to the effect that the court admitted improper and refused to admit proper evidence and gave improper and refused to give proper instructions, were the following: "5. The verdict is contrary to the law and the evidence in the case; 6. The jury in this case was not properly selected to try the issues in this cause; 7. The petition filed in this cause is not sufficient to sustain a judgment condemning private property for public use; 8. No petition has been filed in this cause asking to condemn the lands of this defendant." Among the written reasons filed by the appellant in favor of his motion to arrest the judgment, besides those relating to the admission of improper and the refusal of proper evidence and the refusal of certain instructions, the following reasons were set up: "4. That the court erred in overruling the motion by the defendant for a new trial herein; 5. That there was no proper petition filed in said cause to condemn the land of this defendant; 6. That there was no petition to condemn the land of this defendant as required by law; 7. That the jury in this cause was not chosen in accordance with law." The bond and bill of exceptions were filed within the time required by the order of court, and the bond was approved within such time.

In the bill of exceptions immediately after the judgment of June 24, 1904, is the following statement or recital:

"And the court refuses to either overrule or sustain the objections of the defendant herein filed, but rules that the calling of the jury herein disposed of all the objections filed herein, and that, after the verdict of the jury, the assessment of the commissioners was of no effect, but that a new assessment was made by the jury, and they were held to have made the assessment *de novo;* to which defendant excepts."

BROWN, BURNSIDE & BULLINGTON, for appellant.

JOHN H. WEBB, and JAMES M. TAYLOR, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a proceeding for the organization of a levee and drainage district under the act of May 29, 1879, as amended in 1885, and entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1500).

It will be seen from the statement of facts preceding this opinion, that damages for lands of appellant taken for the improvement in question, and damages to lands of appellant not taken, were assessed by three commissioners appointed by the court. The assessment roll, filed by the petitioners, and the verdict returned by the jury, show that some 14 acres, belonging to appellant, were taken for the building of the levee and ditches in question. This court held in *Juvinall* v. *Jamesburg Drainage District,* 204 Ill. 106, that those provisions in the act of May 29, 1879, and the amendments thereto passed in 1885, which authorized the assessment of damages for lands taken, and of damages to lands not taken, by commissioners instead of a jury, were unconstitutional. The reasons for this conclusion need not be here repeated. Therefore, the objections, filed by the appellant to the original assessment of such damages by the commissioners as to appellant's property, so far as such objections relate to the power of the commissioners to make the assessment without a jury, were well taken. The county court did not make any ruling either overruling or sustaining these objections, but, recognizing their validity, ordered a jury to be empaneled, and ruled that the calling of the jury disposed of such objections.

In *Wabash Railroad Co.* v. *Coon Run Drainage District,* 194 Ill. 310, this court held that the sections of the act of May 29, 1879, which attempted to provide for the assessment of damages by a jury, are unconstitutional as not des-

ignating for that purpose such a jury as is contemplated by
the organic law. The reasons for this conclusion are stated
in the last named case, and need not be here repeated. If,
therefore, the court had ordered the damages to be assessed
by such jury, as is provided for in the act of May 29, 1879,
and in the manner specified in that act, the error of causing
the damages to be assessed by commissioners would not have
been cured. In view of this difficulty the court ordered a
jury to be empaneled or drawn "under the Eminent Domain
act," as is stated in the order entered on March 15, 1904.

The principal question, therefore, which is presented by
this record, is whether the county court, in a proceeding for
the organization of a drainage district under the act of May
29, 1879, and for the assessment of benefits and damages
under the terms of that act, can abandon such act, and in-
voke the aid of the Eminent Domain act for the purpose of
fixing the compensation to be paid to the property owner for
the taking or damaging of his property. We are of the opin-
ion that the county court had no power to pursue this course,
and that its action in this regard was erroneous. The bill
of exceptions shows that, when the court directed the jury
to be drawn under the Eminent Domain act, counsel for ap-
pellant excepted to such action of the court. It also appears
that counsel for appellant asked for a new trial, and made
a motion in arrest of judgment, upon the ground that the
jury was not properly selected to try the issues in the case.
Due exception was taken by the appellant to the action of the
court in overruling his motion for new trial and his motion
in arrest of judgment. These exceptions bring the question
directly before us as to the correctness of this action of the
court, and, in view of such exceptions, the right of appellant
to object to the action of the court has not been waived.
Cases, to the effect that there was such waiver by reason of
a failure to challenge the array on account of some irregu-
larity in the summoning of the jury or the issuing of a
venire, have no application here. (*McCaleb* v. *Coon Run*

*Drainage District,* 190 Ill. 549; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hock,* 118 id. 587).

Section 2 of the Eminent Domain act provides that the petition, therein required to be filed, is to be filed in cases where the right to condemn property, or to take property for public use without the owner's consent, is conferred by general law or special authority upon any corporate or municipal authority, etc. The act of May 29, 1879, as subsequently amended, is the only law, which gives to the levee and drainage districts therein described the power to take private property for the improvements therein permitted. That act provides the specific mode, by which damages for taking or damaging such property are to be assessed. In *Trigger* v. *Drainage District,* 193 Ill. 230, we said (p. 233) : "It is clear from the several sections of the act under which this proceeding was had that the county court may, in the first instance, order the assessment of benefits to be made, either by a jury or by the commissioners, and that whichever body is ordered to make the assessment must hear and determine objections filed to such assessment." The jury, which is to fix the amount to be awarded as damages for property taken, is the jury described in the act of May 29, 1879. In other words, the power of condemnation of private property for public purposes, as conferred by the act of May 29, 1879, must be exercised in the manner pointed out in that act, and not in the manner pointed out in the Eminent Domain act. So far as the legislature conferred the power of condemnation by the act of May 29, 1879, upon levee and drainage districts, it conferred such power to be exercised in the mode described in the act, and its intention was that such power should be exercised only in that mode, and not in some other mode. The object of courts, in construing acts of the legislature, is to ascertain the intention of the legislative body, and, if it is clear that the intention of the legislature was to require these districts, or their commissioners, to proceed in the mode specified in that act, the power to proceed in the

mode specified in some other act is excluded. There is nothing in the act of May 29, 1879, or any of the subsequent amendments thereto, which authorizes the county court, or any other court, to proceed in accordance with the provisions of the Eminent Domain act. Section 46 of the act of 1879 refers only to the construction of additional drains, etc., or the repair of drains already constructed by drainage and levee districts already organized.

Under section 2 of the Eminent Domain act the party, authorized to take or damage private property or to construct a public improvement by the taking or damaging of such property, must apply to the judge of the circuit court or county court, either in vacation or term time, where the said property or any part thereof is situated, by filing with the clerk a petition. This petition must set forth by reference the authority of the party seeking condemnation, the purpose for which the property is sought to be taken or damaged, etc., and it must pray the judge to cause the compensation, to be paid to the owner, to be assessed. It has been held that this petition is jurisdictional, and the filing of it with the proper averments, as required by section 2 of the Eminent Domain act, is necessary to put the court in motion, in order to enable it to determine the compensation to be paid for the property taken or damaged.

In *Chicago and Northwestern Railway Co.* v. *Galt,* 133 Ill. 657, we said (p. 667) : "To put the court in motion and give it jurisdiction in condemnation proceedings, a petition is, in general, necessary, and must be in conformity with the statute granting the right of condemnation. It should set forth by appropriate averments all such facts as are necessary to authorize the tribunal to act. * * * The jurisdiction, exercised in condemnation cases, is always of a special character. The proceedings are to be conducted according to a certain prescribed mode."

In the case at bar, no petition was filed in this proceeding, as required by section 2 of the Eminent Domain act.

(2 Starr & Curt. Ann. Stat.—2d ed.—p. 1763). Counsel
for appellee seem to be under the impression that the filing
of the petition in this proceeding for the organization of the
levee and drainage district is such a filing of a petition, as
will meet the requirements of the Eminent Domain act. In
pursuance of this idea counsel for appellee asked the court
to give, and the court did give in their behalf, an instruction
to the jury to the effect "that for all lands taken for a right
of way by the levee and drainage district compensation is to
be made for the same at their fair, cash market value at the
time of filing the petition." This instruction was clearly
erroneous. No other petition was filed in the proceeding at
bar, except the original petition for the organization of a
drainage district. At the time when that petition was filed,
which was on March 11, 1903, no drainage district was or-
ganized. It was not until subsequently, to-wit, in Septem-
ber, 1903, that the county court entered an order, declaring
the drainage district to be established in accordance with
the provisions of section 16 of the act of May 29, 1879.
The original petition was not filed by an existing and estab-
lished drainage district, but by certain individual property
owners, asking for the organization of a district. Section 2
of the Eminent Domain act contemplates a petition, filed by
an already existing and established corporation, vested by
general law or special charter with the power to condemn
property. Therefore, the petition, filed in this proceeding on
March 11, 1903, before the organization or establishment of
the drainage district, cannot be regarded as in any sense
such a petition as is contemplated by section 2 of the Emi-
nent Domain act. It is the doctrine of this court, that the
compensation to be paid to the property owner, when his
property is condemned, must be fixed by the valuation of the
property at the time of the filing of the petition, and the right
vested in the condemning party, upon the payment of the
compensation awarded for the land, relates back to the time
of filing the petition. (*South Park Comrs.* v. *Dunlevy,* 91 Ill.

49; *Schreiber* v. *Chicago and Evanston Railroad Co.* 115 id. 340; *Chicago, Evanston and Lake Superior Railroad Co.* v. *Catholic Bishop,* 119 id. 525).

The only petition filed in this proceeding, which was a petition by property owners and not by a drainage district, is a petition for the organization of a district, and not only fails to ask any such relief as that compensation be made for lands taken or damaged, but does not allege, as is required by section 2 of the Eminent Domain act, that the compensation to be paid cannot be agreed upon with appellant. In *Reed* v. *Ohio and Mississippi Railway Co.* 126 Ill. 48, we said (p. 52) : "There is in the petition and proof in this case a total want of any reference to the jurisdictional fact of the inability of appellee railway company to agree with the land owner as to the compensation to be paid. There seems to have been no effort made to purchase the land, or agree on the compensation or price to be paid therefor, before resorting to this proceeding. The petition was clearly insufficient to give the court jurisdiction, or to entitle the appellee company to appropriate appellant's land."

After the Vandalia Levee and Drainage District, the appellee herein, had been organized, it had the power to proceed under the Eminent Domain act by an original proceeding to condemn the property of the appellant. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Drainage District,* 213 Ill. 83.) This was not an original proceeding under the Eminent Domain act, but an attempt to incorporate the provisions of the Eminent Domain act into the Levee and Drainage act of May 29, 1879, and to make use of a part of those provisions, without taking the steps required by the Eminent Domain act to give a court jurisdiction to undertake the condemnation of property.

The views here expressed are in accord with the holding of this court in *Trigger* v. *Drainage District, supra,* where the appellant moved to submit the case to a jury, which motion was overruled, and the court, after using the language

above quoted from that case, said: "The county court had no power to grant the motion of counsel for the objector to empanel a special jury to hear the issues formed on the objections. If evils or hardships result from the statute, the remedy is in the legislature, and not with the courts."

The character of the proceedings, and the nature of the verdict rendered by the jury, show that there was a mixing up and commingling of certain requirements of the Eminent Domain act with those of the Levee and Drainage act. For example, the verdict of the jury fixed the amounts assessed for benefits. There is no provision in the Eminent Domain act which authorizes any assessment for benefits; the object of that act is merely to ascertain compensation for land taken or damaged for a public purpose. The verdict of the jury shows that they assessed benefits, not only against the land of the appellant which was not taken for the improvement in question, but they assessed benefits against the 14 acres of land which were taken by the district for the improvement. In other words, appellant was required to pay benefits not only for his own land, but for the land which had been taken from him for the purposes of the district, and which, if properly taken, necessarily belonged to the district, and not to appellant.

Another serious error committed by the court below was in instructing the jury for the appellee that the assessment roll of the district, which had been admitted in evidence before the jury, made out a *prima facie* case for the district, or was *prima facie* evidence to sustain the assessment for benefits upon all the tracts of land in controversy, etc. The assessment roll was made under the provisions of the act of May 29, 1879, which this court has declared to be unconstitutional. It could only have been made under those provisions of the act of May 29, 1879, which provide for the making of assessments by commissioners, or under those other provisions which require the making of assessments by a jury organized as the jury is required to be organized

under said act.   The amounts of compensation, awarded by the jury in their verdict as damages for the 14 acres of appellant's property, which were taken by the district, are the same as the amounts specified in the assessment roll.   The effect of the instruction above referred to in regard to the assessment roll was to induce the jury to find the amount of compensation to be awarded to appellant to be such as was specified in the assessment roll, and not such as was proper according to their own judgment.

For the reasons above stated, we are of the opinion that the judgment of the county court is erroneous.   Accordingly, such judgment is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.   *Reversed and remanded.*