THE MORGAN CREEK DRAINAGE DISTRICT, Defendant in
Error, vs. FRANK O. HAWLEY, Plaintiff in Error.

*Opinion filed April 23, 1909—Rehearing denied June 2, 1909.*

1. APPEALS AND ERRORS—*when bill of exceptions is not neces-
sary.* A bill of exceptions is not necessary for the consideration
and determination of such errors as appear from the record itself,
but in the absence of a bill of exceptions no errors not appearing
on the face of the record can be considered.

2. DRAINAGE—*oath to be taken by commissioners limits assess-
ment of benefits.* The oath to be taken by drainage commissioners
under section 17 of the Levee act limits the assessment of benefits
to lands embraced in the proposed district "against which no dam-
ages have been allowed," and hence if part of a tract of land has
been taken for right of way and compensation therefor has been
agreed upon, the assessment roll should not show an assessment
of benefits against the entire tract. (*Gauen* v. *Drainage District,*
131 Ill. 446, distinguished.)

3. SAME—*commissioners cannot make assessment for amount
greater than estimated cost.* Levee drainage commissioners have
no power to make an assessment which exceeds the amount ap-
proved and confirmed by the court as the estimated cost of the
work and the proceeding, and the court is without jurisdiction to
confirm an assessment for such greater amount.

4. SAME—*when party cannot raise question that no order to
commissioners to secure right of way was made.* One who agrees
with levee drainage commissioners on a right of way over his land
and executes a release of damages in consideration of their agree-
ment to pay him the price fixed upon is not in a position to object
to the confirmation of the drainage assessment on the ground that
the commissioners proceeded to secure the right of way for the
ditches of the district without an order of the court to do so.

WRIT OF ERROR to the County Court of Kendall county;
the Hon. WILLIAM HILL, Judge, presiding.

This is a writ of error sued out of this court to review
a judgment of the county court of Kendall county confirm-
ing an assessment made by the drainage commissioners of
Morgan Creek Drainage District, a drainage district organ-
ized under the Levee act.

Upon the presentation of the petition for the organization of the district the court found it in compliance with the requirements of law and appointed commissioners to lay out the district. The commissioners so appointed filed their report, and July 29, 1907, was fixed as the date for a hearing upon said report and notice given accordingly. Plaintiff in error and others filed objections to this report of the commissioners, but the objections were overruled and the report approved and confirmed and the district declared organized. The report stated that "the probable cost of the work mentioned in the said petition herein described, including all incidental expenses and the cost of proceedings therefor, will be the sum of, to-wit, $19,339.80, in accordance with the surveyor's estimate, marked 'Exhibit C' and hereby made part of this report." It was further stated in the report that the cost of keeping the ditches in repair would not exceed $100 per year; that the lands in the district would be benefited by the proposed work and that the benefits would exceed the cost of constructing the work.

No order appears from the record to have been made by the court directing the commissioners to procure the right of way for the ditches, but said commissioners proceeded to do so, and under date of July 23, 1907, secured the signatures of a considerable number of land owners to an agreement consenting that the ditches might be constructed across the lands owned by the parties, respectively, in accordance with the plans and profiles. The consideration for this release was the mutual benefits to be derived by the parties from the construction of the ditches.

Under date of September 7, 1907, plaintiff in error and the commissioners agreed upon $500 damages for the right of way across his lands, and in consideration of the payment of that sum plaintiff in error released the right of way over his lands for the ditches. On November 2, 1907, the commissioners agreed with J. N. Wayne, a land owner in the district, to pay him $650 for the right of way across

his land, and he signed an agreement releasing said right of way. On November 2, 1907, the commissioners filed a report stating that in accordance with the order and direction of the court they went upon the land of the district for the purpose of securing the right of way for the proposed ditches. The report states the commissioners had agreed with plaintiff in error to pay him $500 for the right of way and to pay Wayne $650. The report also recommends some changes in the plan of the work in accordance with the request of a petition signed by the land owners, and some other changes in the depth and curve of certain portions of the ditches to accelerate the flow of the water. This report was approved by the court the day it was filed.

On the fourth of November, 1907, the commissioners took and subscribed the oath as commissioners of said district and also to make an assessment of benefits to lands embraced in the district. The oath to make the assessment was in the following form: "We, and each of us, do further solemnly swear that we will faithfully and impartially make an assessment of the benefits to the lands embraced in the said proposed district according to law." On the 25th day of November, 1907, the commissioners filed their assessment roll, showing a total assessment of $20,662.50. Something over $7000 of this amount was assessed against the lands of plaintiff in error. He and others filed objections to the confirmation of the assessment roll.

The judgment recites "that all objections filed, except objections to the amount of the assessment, are not well taken and were and are hereby overruled." The judgment further recites that at the conclusion of the hearing the commissioners retired to consider objections made to the assessment of benefits, and made such amendments to the assessment roll as the commissioners thought just and equitable under the law and the evidence, and thereafter, on December 17, 1907, filed a corrected assessment roll, and the assessment roll as corrected was approved and ordered

spread upon the records of the court. The correction in the assessment roll consisted of a reduction of the amount of benefits to thirty acres of plaintiff in error's land which had been erroneously assessed as a larger tract, and reduction of benefits assessed to lands owned by three other parties. The total reduction amounted to $742.50, and left the total amount of benefits assessed $520.30 greater than the estimated cost of the work and expense of the proceeding. On the 26th of December, 1907, plaintiff in error and others filed their motion in the county court, with their reasons in support thereof, to set aside and vacate the judgment of confirmation and for a rehearing upon the assessment roll. This motion appears to have been continued from time to time, and on the 4th of March, 1908, the same parties, by leave of court, filed additional reasons in support of their motion, and on the same day a judgment was entered overruling the motion. Objectors prayed an appeal, which was denied, and this writ of error was sued out.

A. H. SWITZER, (J. IVOR MONTGOMERY, of counsel,) for plaintiff in error.

JOHN M. RAYMOND, and JOHN K. NEWHALL, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

No bill of exceptions is incorporated in the record, and therefore only such errors assigned as are shown by the record are subject to review by this court.

It is objected that the oath taken by the commissioners to assess benefits was not the oath required to be taken by the statute, and that in making the assessment the commissioners assessed benefits against lands of plaintiff in error taken for right of way for the ditches. Section 17 of the Levee act provides that after the damages have been agreed upon and approved by the court, "the commissioners shall be sworn to faithfully and impartially make an

assessment of the benefits to the lands embraced in said proposed district and against which no damages have been allowed." It will be observed from the copy of the oath above set out that the commissioners were sworn to assess benefits to the lands in the proposed district, but the requirement of the statute, "against which no damages have been allowed," is not embraced in the oath.

The ditches of the district, as shown by the record, run through a large amount of plaintiff in error's lands. The main ditch is ten/ feet wide at the bottom, the north branch six feet wide at the bottom, the south branch eight feet wide at the bottom, and all have side slopes of one to one. The report of the commissioners gave the width of the right of way of the main ditch at seventy feet and the two branches each fifty feet. The release of plaintiff in error was for sufficient land for the ditches and also sufficient land upon which to deposit the earth excavated, far enough from the channel to leave a six-foot berm on each side. This required taking several acres of his lands, but in the assessment roll each tract is described as a whole and benefits assessed against it in a lump sum. It does not appear from the assessment roll that any reduction in acreage or the amount of benefits assessed, on account of land taken, was made. Apparently the full acreage in each tract is assessed for benefits, and the fact that a portion of several of said tracts was taken for the ditches was overlooked by the commissioners.

In *Durham* v. *Mulkey*, 59 Ill. 91, one of the questions before the court was the requirement of the oath of commissioners to assign dower and the necessity of the oath appearing in the record. The court said, on page 93: "Their [commissioners'] report states they were duly sworn in open court, but the report, as well as other portions of the record, fails to show the character of the oath they took. Whether it conformed to the requirements of the statute or not nowhere appears. The statute is peremptory

that the commissioners shall take an oath, and what it shall contain is fully and specifically prescribed. Being a statutory requirement it cannot be dispensed with in such a proceeding. In *Tibbs* v. *Allen,* 27 Ill. 119, it was held that the oath must conform to the requirements of the statute. In this case the record fails to disclose that the law in this respect has been observed, which was manifest error. It is, in fact, only replied to this assignment of error that no exception was taken. In such a proceeding and as to such a requirement it is for the party relying upon the action of the commissioners to show that the statute has been pursued. It was not necessary that any exceptions should be filed to the report of the commissioners to render the objection tenable."

In *Crossett* v. *Owens,* 110 Ill. 378, the question whether a certain alleged highway had been properly laid out by commissioners, appointed for that purpose was involved. The record contained the certificate of a justice of the peace that the commissioners were duly qualified before him according to law. The report of the commissioners recites that they were duly sworn. This was held insufficient, and after commenting with approval on *Durham* v. *Mulkey, supra,* and *Tibbs* v. *Allen,* cited in that case, the court said, on page 381: "The act of 1847, like the Partition statute, requires the commissioners to take an oath that they will perform specified acts, and inasmuch as the proceeding is summary, all material requirements must appear to have been complied with to render the proceeding binding. The commissioners were not empowered to act until they took the prescribed oath, and to sustain a summary proceeding of this character it must appear that this essential requirement was performed. This is the doctrine of the cases referred to above."

Here the record shows the oath taken by the commissioners and that it omits an essential requirement of the statute. The assessment of benefits made in pursuance of

said oath is apparently made without reference to the requirement of the statute that benefits can be assessed only to lands against which no damages have been allowed.

Defendant in error contends that the assessment of benefits is made against each tract of land as a unit, and that where only a portion of a tract is benefited, the benefits to such portion, when determined, are properly assessed against the whole tract as a unit, and *Gauen* v. *Drainage District,* 131 Ill. 446, is relied on in support of this contention. In that case Josephine Gauen owned a quarter section of land in the drainage district. A jury empaneled to make the assessment reported that one hundred and eighteen and one-half acres of the quarter section were benefited. What part of the quarter section this one hundred and eighteen and one-half acres was in was not shown, and the benefits were assessed to the entire quarter section. The court sustained this assessment, and said that although only a portion of the land was wet and required drainage, the drainage of that portion would enhance the value, not merely of the portion drained, but of the whole tract, and that it was not unreasonable or oppressive in deeming the entire tract benefited and throwing the burden equally upon every part of it. In that case one person owned the entire quarter section of land and received all the benefits, whether extended against the whole or a portion of the tract. In this case the drainage district has a perpetual easement in several acres of plaintiff in error's land,—in fact, for all practical purposes may be said to own it. If this land was not assessed benefits, it should be made to appear by the assessment roll and not left to guess or conjecture. Benefits cannot be assessed to land taken. *Hutchins* v. *Vandalia Levee District,* 217 Ill. 561; *Juvinall* v. *Jamesburg Drainage District,* 204 id. 106; *City of Joliet* v. *Spring Creek Drainage District,* 222 id. 441.

It is also objected that the assessment roll as confirmed by the court was for a greater sum than the estimated cost

240—9

of the work. The original assessment roll was for $1262.70 in excess of the estimated cost. As amended and confirmed it is for $520.30 in excess of the estimate of the cost. The statute requires the commissioners appointed for the organization of the district to ascertain and report the probable cost of the work, including all incidental expenses and the cost of the proceedings therefor. At the hearing upon this report power is conferred upon the court to modify the report or to order the commissioners to review and correct it. If the court finds the district should be organized it shall enter a judgment confirming the report of the commissioners, and the district is thereupon declared to be organized as a drainage district; and the sixteenth section of the act provides that thereafter the legal existence of the district can "not be attacked in any collateral proceeding or any assessment of benefits or damages in any manner, except by *quo warranto.*" The assessment of benefits is made for the purpose of raising the amount of money which the commissioners, and the court by the approval of their report, have determined is required to pay the cost of the work and all incidental expenses. In making the assessment no tract of land can be assessed for more than it is benefited nor for more than its proportionate share "of the estimated cost of the work and the expenses of the proceeding." It seems clear that under the provisions of the act the commissioners have no power to spread an assessment for a greater sum of money than the estimated cost of the work which has been approved and confirmed by the court, and the court is without jurisdiction to confirm an assessment exceeding in amount the estimated cost.

We are referred to no case where this precise question has been decided, but the view we have expressed appears to be the plain meaning of the act under which the district was organized. Provision is made for an additional assessment if necessary for the completion of the work already commenced, to insure the drainage of the lands in

the district, but nowhere in the act will there be found any intimation of any power or authority in the commissioners, after their estimate of cost has been approved and confirmed by the court, to increase it and to levy an assessment to meet this increased cost.   While this question was not directly before the court in *Badger* v. *Inlet Drainage District*, 141 Ill. 540, what is said in the opinion in that case clearly indicates that the court was of opinion that the drainage commissioners had no authority to increase the estimated cost of the work and assess the lands therefor except by proceeding in accordance with the statute for making an additional assessment.   We have frequently held that commissioners of drainage districts cannot incur an indebtedness and then levy an assessment to pay the same. *Drainage.Comrs.* v. *Kinney*, 233 Ill. 67, and cases cited.

The decision on the questions involved in *Michigan Central Railroad Co.* v. *Drainage District*, 215 Ill. 501, is not in conflict with the view we have expressed.   In the organization of drainage districts the county court derives its power and jurisdiction from the statute and must strictly follow its provisions.   No presumption arises to support its action in any particular.   *Payson* v. *People,* 175 Ill. 267, and cases cited.

We do not think plaintiff in error is in a position to raise the objection that no order was made by the court directing the commissioners to secure the right of way for the ditches.   The record shows they did procure the right of way by agreement with the land owners, including plaintiff in error, and that he executed a release in consideration of the agreement to pay him $500 damages.

Defendant in error insists that as there is no bill of exceptions in the record none of the errors assigned are open to review.   The errors discussed all appear from the record, and where that is so, no bill of exceptions is necessary.

For the errors indicated the judgment of the county court is reversed and the cause is remanded.

*Reversed and remanded.*